626 A.2d 993

**Herbert KISHTER, et al.**

v.

**SEVEN COURTS COMMUNITY ASSOCIATION, INC.**

**No. 1312, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

June 30, 1993.

Max H. Lauten (Kramon & Graham, P.A., on the brief), Baltimore, MD, for appellants.

Minda Goldberg (Samuel Blibaum, Dwight W. Clark and Wartzman, Omansky, Blibaum, Simons, Steinberg, Sachs & Sagal, P.A., on the brief), Baltimore, MD, for appellee.

Argued before GARRITY, MOTZ, ROSALYN B. BELL (Retired, Specially Assigned), JJ.

GARRITY, Judge.

On September 6, 1989, appellants, Herbert Kishter and Seven Courts Partnership, filed a Complaint against defendant, Seven Courts Community Association, Inc. (the Association), in the Circuit Court for Baltimore County, seeking the reformation of a deed dated May 11, 1978. Appellants maintained that they were entitled to the relief sought because the deed, through a mutual mistake, erroneously conveyed a 1.9962 acre-parcel that the parties had agreed the grantor would retain.

The matter came before the circuit court for a non-jury trial on May 19, 1992. At the conclusion of appellants' case, the trial judge granted the Association's motion for judgment.

## BACKGROUND

In January of 1974, appellant Kishter acquired approximately 85 acres of land on the north side of Joppa Road, just west of the intersection with Belair Road, in Baltimore County. Shortly thereafter, appellants commenced developing the land as a townhouse project known as Seven Courts. The project was to be developed in two phases and six plats.

In accordance with a Declaration of Covenants, Conditions and Restrictions concerning the development, appellants incorporated the Seven Courts Community Association, Inc. on June 4, 1974. The Association was formed as a non-profit civic organization to promote the welfare of the Seven Courts development and its residents. Kishter became the Association's chief executive officer and handled its affairs until October 23, 1978, when control of the Association was turned over to the residents of Seven Courts.

On May 11, 1978, Kishter, in his personal capacity and on behalf of the Seven Courts Partnership, executed and delivered a deed that conveyed title to certain parcels or lots identified on recorded plats within the development to the Association in accordance with the Seven Courts Declaration of Covenants, Conditions and Restrictions that required the developer to convey the common areas to the Association.

Appellants maintain that the deed, which clearly included the contested parcel as part of the property being transferred, was in error and did not reflect the agreement arrived at between the parties. Kishter testified that in his roles as chief executive officer of the Association, and on behalf of the partnership and himself, his intention was that the contested parcel not be included in the deed. Ms. Bonnie Julian–Silbert, another of the Association's three directors, testified that she too understood that the disputed parcel was to be reserved for future development of single family housing. Appellants attribute the error in the deed to a mistake made by Kishter's lawyer, Richard Sokolov; in deposition, Sokolov himself conceded this. Appellants also point out that the open space requirements made applicable to the development by its subdi-

vision approval are greatly exceeded even when the contested parcel is not treated as part of the common area within the development and that although the development was approved for 374 housing units, only 368 townhouses were built. Appellants explained that they intended to build the six remaining units on the contested parcel.

The Association maintains that during the eleven-year period between the execution of the deed and the filing of the Complaint in this matter, they held the property openly, continuously and notoriously, maintained and improved the property, and paid the taxes thereon. Appellants attributed their failure to pay the taxes or at least broach this issue with the Association to Kishter's inadequate bookkeeping. Appellants also asserts that the County maintained the property on their behalf.

At trial, appellants sought to reform the deed to conform to the parties' original intent not to include the disputed parcel in the property transferred to the Association. After the close of appellants' case, the Association moved for judgment, which was granted.

After hearing appellants' case, the trial judge was apparently convinced that Mr. Kishter's intention at the time the deed was executed was to retain the disputed parcel to himself and the partnership so that it could be developed as six single family homes at a future date. The trial judge was also convinced that Sokolov had indeed erred in preparing the deed and that the error resulted in a windfall for appellee. Despite these findings, however, the trial court determined, as a matter of law, that appellants were not entitled to the relief they were seeking. He reasoned that since Kishter was on both sides of the 1978 transaction there could have been no meeting of the minds as is required under the doctrine of mutual mistake. The trial judge set forth the basis for his decision as follows:

> All of the cases that I am familiar with on reformation deal with two distinct parties. The definition of mutual mistake is a failure of a document to effectuate the meeting of the

minds, plural. And I don't think one person can satisfy that requirement. And my judgment is to grant the motion.

## ISSUES PRESENTED

Appellants present three issues for review:

I.  Where a deed conveying common areas from a developer to an incorporated community association mistakenly includes a two-acre parcel which was not intended to be conveyed, and where the grantor-developer is also acting on behalf of the community association, whether as a matter of law the mistake can be considered mutual rather than merely unilateral.

II. Whether the draftsman of the deed can be considered an agent of both parties, so that his mistake is considered a mutual mistake of the parties.

III. Whether the circuit court erred as a matter of law in refusing to admit into evidence the deposition testimony of an out-of-state witness whose deposition was taken pursuant to notice and where the opposing party was represented by counsel at the deposition.

The Association also urges us to consider the question whether appellants' claim is barred by laches. As this issue was not addressed in the decision of the trial court we shall not review it on appeal.

## ANALYSIS

In *Moyer v. Title Guarantee Company,* 227 Md. 499, 177 A.2d 714 (1962), Judge Prescott, speaking for the Court of Appeals, stated that equity has jurisdiction to reform a written instrument "where there has been a mutual mistake—that is, where there has been a meeting of the minds—and an agreement actually entered into, but the instrument, in its written form, does not express what was intended by the parties thereto." *Id.* at 505, 177 A.2d 714. A party seeking reformation of a written instrument must meet a stringent burden of proof. As the Court of Appeals noted in *Moyer,* a plaintiff must show clearly and beyond a reasonable doubt the original

intent of the parties and the existence of a mistake in the written agreement. *Id.* at 504, 177 A.2d 714.

As the trial court considered appellants' request for reformation based on a claim of mutual mistake, it framed the central issue posed by the Association's motion for judgment as follows:

> The only issue, as I see it in this case, at least at this stage of the proceedings, is whether or not a person can agree with themselves and then the document that's prepared as a result of that agreement doesn't reflect what this person thought it should reflect. . . .

The trial court readily found that Mr. Kishter and the partnership, as the grantors, intended to reserve the disputed parcel to themselves for future development. The trial court also stated that Sokolov, the lawyer who drafted the deed, had indeed made a mistake and had failed to properly exclude the disputed parcel from the deed for future development. The factual support for these findings is not disputed by the parties.

The issue decided by the circuit court, and now before us, is whether the fact that appellant Kishter acted in his individual capacity, and as general partner of the partnership as grantor and as the chief executive officer of the grantee corporation inevitably leads to the legal conclusion that there can be no mutual mistake because the mistake, in both instances, was imputedly made by one person, appellant Kishter. We are convinced that the trial court erred in finding that the doctrine of mutual mistake was not, as a matter of law, applicable to the facts of this case. We shall explain.

In concluding that there could be no "meeting of the minds, *plural*," the trial court overlooked the fact that when one person acts in different legal capacities on both sides of the transaction there is actually a perfect meeting of the minds as between the *two parties* to the transaction. The parties to this transaction are on the one side Kishter and the partnership (the developers), represented by Kishter, and on the other side the Association, represented by Kishter as its chief

executive officer. This was not a transaction between Kishter and himself. Rather, it was a transaction between the developers and the Association. Accordingly, the legal determination that the trial court had to make in evaluating appellants' claim of mutual mistake, and that it failed to make by focusing solely on the role of appellant Kishter acting in different capacities for both parties, was whether the two parties to the deed agreed on its terms.

The only evidence on the intent of the Association at that time comes from the testimony of appellant Kishter, in his capacity as the chief executive officer of the Association, and Bonnie Julian–Silbert, then one of two other directors of the Association. Each testified that the Association did not intend, at the time the deed was executed, that the disputed parcel was to be included in the property conveyed pursuant to the Declaration of Covenants, Restrictions and Conditions.

As a result of the foregoing, we are convinced that the trial court erred by failing to recognize that the two parties to the instrument, while represented by the same individual, were in fact separate and distinct entities and, as such, each was capable of forming an intent through their officers or partners. *Hoffman v. Chapman*, 182 Md. 208, 209, 34 A.2d 438 (1943), appears particularly relevant to the case at hand. There, as here, the seller of real property conveyed more property than he intended to another. There, as here, the party benefitted by the mistake claimed that it was the seller's "negligence," 182 Md. at 212, 34 A.2d 438 or, as the Association characterizes it, "careless[ness]" that caused the alleged mistake and that the negligence or carelessness barred the seller's recovery. The Court of Appeals in *Hoffman* expressly rejected this argument, reasoning

mere inadvertence, or negligence not amounting to a violation of a positive legal duty, does not bar a complainant from relief, especially if the defendant has not been prejudiced thereby ... Hence, it is not necessary for the complainant in a suit for a reformation to prove that he

exercised diligence to ascertain what the instrument contained at the time he signed it.

182 Md. at 213, 34 A.2d 438 (citations omitted).

The *Hoffman* court went on to conclude, on facts similar to those at hand, that the mistake there was not unilateral because "the draftsman of the deed was acting as the agent" of all parties and so his mistake became the "mistake of all parties." *Id.* The court below never reached the question of whether the draftsman here was similarly the agent for all parties. Accordingly, that question is not before us. On remand, the circuit court should consider this question. If it finds that the draftsman was the agent for all parties, then the *Hoffman* holding makes it clear that the draftsman's mistake was the "mistake of all parties," *i.e.*, the mistake was mutual.

In considering the draftsman's role, the trial court can and should consider the deposition testimony of the draftsman, if offered by appellants and if the draftsman is still located out-of-state. We note that at the initial trial appellants offered as an exhibit the transcript of a deposition of the draftsman, Richard Sokolov, which had been taken in January, 1992, pursuant to Md. Rule 2-419. The deposition was taken in Ohio, where Sokolov lived and practiced. Counsel for the Association attended the deposition and cross-examined Sokolov. At the time of trial Sokolov was unavailable to appear as a witness. The trial court, however, refused to admit the Sokolov deposition as well as certain exhibits identified and explained by Sokolov.

Under Md. Rule 2-419(a)(3), a deposition in lieu of live testimony is admissible when the deponent/witness is unavailable to testify at trial and the party against whom the deposition is being used was present at the deposition or at least had notice of it. *Shives v. Furst*, 70 Md.App. 328, 521 A.2d 332 (1987). In the present case the deponent/witness was outside of the State and therefore unavailable as a witness. The Association was present at the deposition and, in fact, availed itself of the opportunity to cross examine the deponent. Accordingly, the deposition should have been admitted into evi-

dence. The admissibility of the documents identified at the deposition is a question that the trial court may address when and if the question arises.

Because the trial judge erred in granting the Association's motion for judgment, we must remand this matter to the circuit court for a new trial.

**JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.**