## NOMITA BRADY ET AL. *v.* JOSEPH B. BERKE ET AL.

[No. 1332, September Term, 1975.]

*Decided September 20, 1976.*

The cause was argued before IRVING A. LEVINE and JOHN C. ELDRIDGE, Associate Judges of the Court of Appeals and RALPH W. POWERS, Chief Judge of the Seventh Judicial Circuit, all specially assigned.

*Lewis Straughn Nippard* and *Terry B. Blair,* with whom were *Louis A. Becker* and *Sybert, Sybert & Nippard* on the brief, for appellants.

*Raymond J. Kane, Jr.,* with whom were *Richard D. Neidig* and *Reese & Kane* on the brief, for appellees. *Thomas E. Lloyd* for appellee Claude M. Skinner.

LEVINE, J., delivered the opinion of the Court.

This action for reformation of a deed based on mutual mistake was commenced by the filing by appellees of a bill of complaint in the Circuit Court for Howard County. After appellants successfully moved to include the original surveyor, Claude M. Skinner, as a third party defendant, a trial on the merits was held. In his decision, the trial judge (Macgill, C. J.) determined that the deed should be reformed as requested and dismissed the third party complaint.[1] Appellants filed a petition for rehearing based on newly discovered evidence, but after taking additional testimony, the court filed a memorandum and order affirming its original decision. An appeal was then taken to this Court.

---

1. Though a brief was filed on behalf of Skinner, it does not appear that any error was assigned with respect to that part of the trial court's order dismissing the third party claim against him.

# I

On September 9, 1959, appellee Joseph B. Berke entered into an agreement with Augustus Riggs and his wife whereby Berke was given the option of purchasing a portion of a 150 acre tract owned by Riggs. The Riggs tract was bounded on all four sides by public roads, on the north by U.S. Route 40, on the west by Old Frederick Road, on the south by Maryland Route 144 and on the east by Maryland Route 97. According to the terms of the option agreement, Berke was given the exclusive right to purchase a portion of the tract "containing one hundred twenty (120) acres of land, more or less, to be exactly determined by actual field survey." The boundaries on the north, west and south were to be the public roads; the boundary on the east was to be measured inward from Route 97. The metes and bounds description of the property in the agreement, according to testimony, while not prepared pursuant to a field survey and though an obvious approximation since it failed to close the property at one point, was of a tract containing about 120 acres. Finally, the agreement provided that "the purchase price of the land covered . . . shall be at the rate of nine hundred (900) dollars per acre."

The option was exercised and Skinner, a registered engineer, was requested by Riggs' attorney to make a survey and prepare a description of the property which was the subject of the option agreement. A property description prepared by Skinner was embodied in the deed, which itself purported to convey 120 acres of land, more or less. The settlement sheet prepared at closing indicated a "purchase price of 120 acres at $900.00 per acre."

Then in 1972 appellees retained another registered professional engineer, Leon Podolak, to resurvey the tract in preparation for the sale of a portion of it. At that time Podolak found, and reported to appellees, that the tract described in the January 1960 deed contained, in fact, only 90 acres. Two months later appellees filed a bill of complaint seeking reformation of the deed, alleging mutual mistake and seeking establishment of a new eastern boundary to

reflect the purported intention of the parties that a 120 acre tract be conveyed.

Appellants, respondents below, Hans von Barby and Nomita Amoroso Brady, are the grandchildren of Riggs and devisees of his interest in the remainder of the original tract, Riggs having died testate in 1966; appellees are Berke and the several other grantees under the 1960 deed. Additional parties to this action are Skinner, as a third party defendant, and the State Roads Commission of the State Highway Administration, which had filed a petition to acquire a 17 acre parcel, part of which was within the disputed 30 acres. Appellants do not dispute on appeal the correctness of the lower court's order with respect to the division of monies paid by the State Roads Commission for that portion of the tract taken in the exercise of eminent domain, except, of course, to argue that no division is appropriate because reformation is unwarranted.

In support of their claim, appellees offered, in addition to that of Berke, the testimony of Reginald D. Malloy, an attorney who represented Berke in the purchase and was present at settlement, and of the two professional engineers.

Malloy testified as to the composition of the settlement sheet, already mentioned, and the fact that he had calculated the purchase price of $108,000 by multiplying the unit price of $900 stated in the option agreement by 120, the number of acres to be sold. He further testified that he hired Skinner to survey the property and prepare the description for the deed.

Over objection, Skinner testified that he had been employed by an attorney to prepare descriptions of a 120 acre parcel for purposes of a contract of sale and of a 20 acre parcel to be specifically exempted from the operation of a purchase money mortgage taken back by Riggs. He testified that he was later contacted by another attorney and asked to prepare a third description, this of a 90 acre parcel for the purpose of a mortgage release. The 90 acre description was prepared, according to his testimony, by taking a carbon copy of the plat of the 120 acre parcel and erasing the easterly boundary, drawing in a new boundary somewhat

west thereof. Skinner neglected, however, according to his own testimony, to change his notation on the plat that the parcel shown contained 120 acres. Finally, it was his testimony that the 90 acre description was the one incorporated in the deed.

Two plats were prepared by Podolak, one showing the 90 acre area described in the deed and the other showing a 120 acre tract, derived from the description in the option agreement with the addition of a small area added to bring the total acreage up to 120. The boundary line of the 120 acre tract drawn by Podolak, according to his testimony, was nearly identical to the line, erased but still clearly visible, on the 90 acre plat prepared by Skinner.

Upon the foregoing facts, the trial court concluded that mutual mistake as to the description of the property had been established "clearly and beyond a doubt." It was therefore ordered that the deed be reformed by changing the eastern boundary to that calculated by Podolak and that appropriate sums be paid to appellees by appellants and the State Roads Commission.

The first argument of appellants is that the evidence was insufficient to establish either mutual mistake or the precise agreement if indeed a mistake was made. In considering this argument we are mindful of Maryland Rule 1086, also applicable in actions for reformation, which provides that the judgment of the trial court is not to be set aside on the evidence unless clearly erroneous. *See Lazenby v. F. P. Asher, Jr. & Sons,* 266 Md. 679, 683, 296 A. 2d 699 (1972).

It is well settled that a court of equity will reform a written instrument to make it conform to the real intention of the parties where, because of a mutual mistake of fact, the instrument fails to express that intent. *Mattingly v. Houston,* 235 Md. 54, 59, 200 A. 2d 160 (1964); *Painter v. Delea,* 229 Md. 558, 563-64, 184 A. 2d 913 (1962); *Moyer v. Title Guarantee Co.,* 227 Md. 499, 505, 177 A. 2d 714 (1962). More specifically, as was said in *Hoffman v. Chapman,* 182 Md. 208, 214, 34 A. 2d 438 (1943):

> "Where a deed is intended to carry into execution a written or oral agreement, but fails to express the

> manifest intention of the parties on account of a mistake . . . whether from carelessness, forgetfulness or lack of skill, equity will rectify the mistake to make the deed express the real intention of the parties." (citations omitted).

Further, it is settled that the standard of proof is not that ordinarily applied in civil cases; reformation will be granted only if the evidence is "clear, strong and convincing." *Mattingly v. Houston, supra,* 235 Md. at 59; *Hoffman v. Chapman, supra,* 182 Md. at 210.

While it is true, as appellants argue, that one seeking reformation of an instrument must show not only that there has been a mistake, but also what was the agreement contemplated by the parties, *Housing Equity Corp. v. Joyce,* 265 Md. 570, 580-81, 290 A. 2d 769 (1972); *Painter v. Delea, supra,* 229 Md. at 564; *Moyer v. Title Guarantee Co., supra,* 227 Md. at 504, in our opinion there is clear and convincing evidence of both in the record of this case. First, appellees demonstrated clearly the existence of mutual mistake. The testimonial and documentary evidence presented indicates no intention other than to convey a 120 acre tract of land. The option agreement, the settlement sheet and the deed itself are concerned with the transfer of 120, not 90, acres. Moreover, appellees have demonstrated the origin of the mistake in the preparation and mislabeling of the third plat by the engineer.

Secondly, appellees, in our view, have amply demonstrated what was the actual agreement contemplated by the parties. Most important in this regard is the option agreement which described, in rough figures, the 120 acre tract it was the intention of the seller to convey and the purchaser to acquire. That the erased line on the 90 acre plat prepared by Skinner, which showed his calculation of the eastern boundary of the 120 acre tract, tracked, according to testimony, almost exactly the boundary line fixed by Podolak according to the directions in the option agreement demonstrates the accuracy with which the true agreement was determined.

It is therefore our view that the evidence was sufficient to support the ordered reformation.

## II

It is next argued by appellants that the testimony of Skinner should have been excluded by operation of the Dead Man's Statute. Maryland Code (1974), § 9-116 of the Courts and Judicial Proceedings Article provides:

> "A party to a proceeding . . . against a . . . devisee . . . may not testify concerning any transaction with or statement made by the dead . . . person, personally or through an agent since dead . . . ."

Appellants contend that since Skinner was made, albeit upon their motion, a third party defendant, he was a party to the proceeding and his testimony was therefore barred by § 9-116. We find it unnecessary, however, to decide whether a third party defendant included in an action by motion of the party seeking protection of the Dead Man's Statute is a party for purposes of § 9-116, since we find that in the circumstances of this case the testimony given was not such as is prohibited by § 9-116 in any event. *See Ridgley v. Beatty*, 222 Md. 76, 82, 159 A. 2d 651 (1960).

The Dead Man's Statute only prohibits testimony of a party "concerning any transaction with . . . the dead . . . person, personally or through an agent since dead." Skinner's testimony was that he never met any of the parties to the transaction, but was instead hired by an attorney to prepare the 120 acre description and plat. Berke testified that, in fact, it was he who paid Skinner to make the survey, this according to the provision in the option agreement that the "Optionee will cause to be made at his own expense a complete survey by a competent surveyor of the land involved." Likewise, the plat and description for the 90 acre tract was prepared upon the request of an attorney, apparently Riggs' attorney Murray, as agent for Riggs. There being no indication that Murray was deceased at the time of the proceeding below, transactions between him, as agent for the deceased, and the witness were admissible. In

any event, the objection made by appellants' counsel was only "to the competency of [Skinner] to testify as to any transactions, conversations or dealings *between he and the decedent, Mr. Riggs.*" (emphasis added). No further objection was made when testimony about transactions had with Murray was introduced.

The objection was, therefore, properly overruled.

### III

Lastly, appellants contend that the trial court erred in finding that appellees' action was not barred by laches because of the passage of time, some 12 years, between the date of execution of the deed and the institution of this action. We find this contention to be equally without merit.

In general, there is no inflexible rule as to what constitutes laches, and hence the existence of laches must be determined on the facts and circumstances peculiar to each case. *Parker v. Board of Elec. Sup.*, 230 Md. 126, 130, 186 A. 2d 195 (1962); *Boggs v. Dundalk Realty Co.*, 132 Md. 476, 481, 104 A. 45 (1918); *Warburton v. Davis*, 123 Md. 225, 231, 91 A. 163 (1914). The passage of time is merely one factor to be considered in determining whether the delay is unreasonable and unjustified. *Parker v. Board of Elec. Sup., supra.*

Appellants rely primarily on the principle, occasionally applied, that in an appropriate case, such as where there is a long unexplained delay in bringing an action, a court of equity will apply by analogy the statute of limitations applicable in the most nearly apposite action at law. *See, e.g., Hall v. Barlow Corporation*, 255 Md. 28, 42, 255 A. 2d 873 (1969); *Stevens v. Bennett*, 234 Md. 348, 351, 199 A. 2d 221 (1964); *Brashears v. Collison*, 207 Md. 339, 352, 115 A. 2d 289 (1955). The appropriate statute of limitations here is, perhaps, as argued by appellants, the 12 year limitation on actions on a specialty.

The flaw in appellants' theory, however, is that they would measure the delay from the date of execution of the deed, apparently based on the presumption that the subsequent delay is unexplained. In fact, it is well settled that time begins to run, for purposes of laches, from the

time the party charged with it should have had knowledge or the means of knowledge of facts giving rise to his right or cause of action. *Berman v. Leckner,* 193 Md. 177, 185, 66 A. 2d 392 (1949); *Labanowski v. Baltimore,* 168 Md. 127, 132, 176 A. 615 (1935); *Sears v. Barker,* 155 Md. 323, 330, 141 A. 908 (1928); *Cit. Mut. F. I. Co. v. Conowingo B. Co.,* 116 Md. 422, 434-35, 82 A. 372 (1911). The trial court found that appellees were in possession of no facts prior to the time of the commission of the new survey by Podolak, only two months prior to the institution of this action, putting them on notice of the error in the description in the deed. The shortage would not, according to the court below, have been apparent even to one skilled in estimating land areas from observation, nor would the average layman possess the skill necessary to calculate the land area from the description in the deed. In short, there was no reason for appellees to suspect any error in the original survey and therefore no reason to have a new survey made. The relevant delay was, therefore, only some two months, a delay not of unusual duration.

Nor does it appear that appellants were appreciably prejudiced by the delay. The land in question remains undeveloped. Indeed, the only prejudice claimed by appellants is that which results from the death of Riggs during the intervening years and the consequent unavailability of his testimony. Riggs, however, died in the period during which appellees lacked knowledge of the facts giving rise to their cause of action, and that event is not, therefore, a significant consideration. In fact, in light of the particularly convincing quality of the evidence in this case, we doubt whether there would be sufficient prejudice to justify a finding of laches in any event. *Cf. McDonnell v. Milholland,* 48 Md. 540, 548 (1878).

There being, therefore, neither an unreasonable delay in commencing this action nor prejudice to the parties charging laches, we find no error in the refusal of the trial court to impute laches to the complainants.

*Judgment affirmed; costs to be paid by appellants.*